Kaleb Lee Basey
17753-006 Cardinal Unit
Federal Medical Center Lexington
P.O. Box 14500
Lexington, KY 40512-4500
Plaintiff in Pro Se



# UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA
## AT ANCHORAGE

| | |
|---|---|
| KALEB LEE BASEY, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>KYLE FREDERICK REARDON, )<br>in his official capacity, )<br>JOLENE GOEDEN, )<br>in her official capacity, )<br>UNITED STATES OF AMERICA, )<br>EXEC. OFFICE FOR THE U.S. )<br>ATTN'YS, )<br>FED. BUREAU OF INV., )<br>U.S. DEP'T OF JUSTICE, )<br>FBI FIELD OFFICE of )<br>ANCHORAGE, ALASKA, )<br>U.S. ATTORNEY'S OFFICE )<br>for the DISTRICT of ALASKA )<br> )<br>_____ Defendants. ) | No. 3:23-cv-00124-JMK<br><br>COMPLAINT<br>(5 U.S.C. §552(a)(4)(B)<br>28 U.S.C. §1331, Fed. R. Civ. P.<br>Rule 60(d)(1)) |

¶1.  This is an action under the Freedom of Information Act ("FOIA"), 5
U.S.C. §552(a)(4)(B), to order production of agency records improperly being
withheld from Plaintiff.

¶2. This is also an independent action in equity under Fed. R. Civ. P. Rule (60)(d)(1) and 28 U.S.C. §1331 seeking relief from this Court's order in the certificate of appealability ("COA") proceeding in *U.S. v. Basey*, No. 4:14-cr-00028-RRB (D. Alaska).[1]

¶3. This is also an action under 28 U.S.C. §1331 and the U.S. Constitution seeking equitable relief for a deprivation of Basey's liberty interest in access to pre-trial exculpatory information without due process of law.

## I. Parties.

¶4. Plaintiff, Kaleb Lee Basey, is the requester of the sought-after records and is the aggrieved party in all Claims below.

¶5. Basey is an inmate at the Federal Medical Center in Lexington, Kentucky.

¶6. Defendants are:

    a. Kyle Frederick Reardon, the primary assistant U.S. attorney (AUSA) for Basey's criminal case, sued in his official capacity.

    b. Jolene Goeden, the primary FBI agent for Basey's case, sued in her official capacity.

    c. the United States of America ("Government");

    d. the United States Department of Justice ("DOJ");

    e. the Executive Office for the U.S. Attorneys ("EOUSA");

---

[1] *See U.S. v. Basey*, 2021 U.S. Dist. LEXIS 70988, *15 (D. Alaska April 13, 2021) (denying Basey a COA).

f.  the Federal Bureau of Investigation ("FBI");

g.  the FBI Field Office of Anchorage, Alaska ("FBI Field Office");

h.  the U.S. Attorney's Office for the District of Alaska.

¶7.  The EOUSA and FBI are components of the DOJ which is an agency of the Government and are all in possession of sought-after records in this case.

## II.  Jurisdiction and venue.

### A.  FOIA jurisdiction and venue.

¶8.  A FOIA requester may file a complaint in an appropriate federal district court once he actually or constructively exhausts his administrative remedies.[2]

¶9.  Basey has constructively exhausted his administrative remedies under the FOIA as explained further below.

¶10.  Under 5 U.S.C. §552(a)(4)(B), a FOIA suit may be brought in the District where the sought-after records are located.

¶11.  The sought-after records in this case are likely located in whole or in part in the District of Alaska as that is where Basey's federal criminal investigation and case occurred and is where he previously maintained a

---

[2]  *E.g., Taylor, v. Appleton*, 30 F.3d 1365, 1367-68 (11th Cir. 1994).

FOIA suit seeking much of the same information at issue.[3] Thus, venue is proper in this District.

¶12. This FOIA suit is brought within six years of the accrual date and is thus timely under 28 U.S.C. §2401(a).

¶13. The Government has waived its sovereign immunity under 5 U.S.C. §552(a)(4)(B) for FOIA clams seeking production of wrongfully withheld records.

## B. Rule 60(d)(1) jurisdiction and venue.

¶14. "[T]he district court that entered the original [order] has inherent 'ancillary' equitable jurisdiction to entertain the suit for relief from the [order]."[4]

¶15. This inherent equitable jurisdiction "to relieve a party from a judgment, *order, or proceeding* is codified in Fed. R. Civ. P. Rule 60(d)(1). (emphasis added).

¶16. Since this Court entered the original order denying Basey a COA in his post-conviction proceeding,[5] it has inherent ancillary equitable jurisdiction,

---

[3] *See Basey v. Dep't of the Army,* No. 4:16-cv-00038-TMB, 2018 U.S. Dist. LEXIS 227506, *32 (D. Alaska May 14, 2018) (granting DOJ summary judgment on its invocation of FOIA Exemption (b)(7)(A)).

[4] *Crosswell v. Sullivan & Crosswell,* 922 F.2d 60, 70 (2d Cir. 1990) (my alterations); *see U.S. v. Beggerly,* 524 U.S. 38, 46 (1998).

[5] *U.S. v. Basey,* 2021 U.S. Dist. LEXIS 70988, *15 (D. Alaska April 13, 2021).

and is a proper venue, to entertain this suit seeking relief from that **order** and COA proceeding.

¶17.    There are no time limits on independent actions under Fed. R. Civ. P. Rule 60(d)(1),[6] thus, the claims brought here under this Rule are timely.

¶18.    This Court has additional jurisdiction over the Claims brought under Rule 60(d)(1) pursuant to 28 U.S.C. §1331 due to the questions of federal law presented therein as well as the Due Process and Suspension Clauses to the U.S. Constitution which incorporate the accepted practice at common law of a petitioner being able to seek collateral review of various aspects of his habeas petition.[7]

¶19.    Because sovereign immunity was inapplicable in the original COA proceeding, sovereign immunity is also inapplicable to the Rule 60(d)(1) claims below as they are "in reality a continuation of the original lawsuit in which jurisdiction was not an issue."[8]

---

[6]    *E.g., Wood v. McEwen,* 644 F.2d 797, 800 n.1 (9th Cir. 1981); *Carr v. D.C.,* 543 F.2d 917, 926 (D.C. Cir. 1976) ("The one-year limit on certain of the Rule 60(b) motions is inapplicable to the independent action...."); *Crosby v. Mills,* 413 F.2d 1273, 1276 (10th Cir. 1969).

[7]    *See generally* Randy Hertz & James L. Leibman, *Federal Habeas Corpus Practice and Procedure,* 7th Edition §28.2[a] n.3 (collecting cases).

[8]    *Beggerly v. U.S.,* 114 F.3d 484, 487 (5th Cir. 1997), *overruled on other grounds by, U.S. v. Beggerly,* 524 U.S. 38 (1998).

¶20.   Also, venue is proper under 28 U.S.C. §1391(e)(1)(B) since "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Alaska.

## C. Jurisdiction and venue for Claim brought under 28 U.S.C. §1331 and the Constitution.

¶21.   This Court has jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331.

¶22.   This Court has jurisdiction to provide equitable remedies where a violation of a constitutional right is established under Article III of the Constitution.[9]

¶23.   Venue is proper in this District under 28 U.S.C. §1391(e)(1)(B) as "a substantial part of the events or omissions giving rise to the claim" occurred in Alaska.

¶24. Claims involving *Brady* violations that seek only equitable relief accrue when the plaintiff has been found guilty in a related criminal case.[10]

---

[9]   *See, e.g., Marbury v. Madison,* 1 Cranch 137, 163 (1803) (civil liberty "consists in the right of every individual to claim the protection of the laws, wherever he receives an injury"); *Missouri v. Jenkins,* 515 U.S. 70, 124 (1995) (Thomas, J., concurring) (assuming "the the remedial authority of the federal courts is inherent in the 'judicial power,' " of Article III); 3 William Blackstone, *Commentaries* *109 ("[I]t is a settled and invariable principle in the laws of England, that every right when with-held must have a remedy, and every injury its proper redress.").

[10]   *See Walker v. Cnty. of Nassau,* 2022 U.S. Dist. LEXIS 223751, *22 (E.D.N.Y. Dec.12, 2022).

Basey v. Reardon
Compl.

6

¶25.  Because Basey was convicted in December 2017,[11] this suit is timely brought within the six-year limitations period of 28 U.S.C. §2401(a).

¶26.  Claims that allege constitutional violations committed by federal official acting in their official capacities "operate[] as a claim against the United States"[12] for purposes of §2401(a).[13]

¶27.  The Government has waived sovereign immunity for claims against its agencies and officers or employees thereof for legal wrongs committed by such individual's acting in their official capacities. *See* 5 U.S.C. §702. Basey raises a Claim below in Claim Five and Six.

¶28.  Prosecutorial and qualified immunity are inapplicable to Claims Five and Six because, in official-capacity claims, "the only immunities available are those that may be asserted by the governmental entity itself...."[14]

---

[11]  Crim Dkt. 214 (Jury Verdicts). "Crim. Dkt." refers to items on the docket in Basey's criminal case/§2255 proceeding/COA proceeding, *U.S. v. Basey,* No. 4:14-cr-00028-RRB.

[12]  *Solida v. McKelvey*, 820 F.3d 1090, 1095 (9th Cir. 2016).

[13]  *See Wind River Mining Corp v. U.S.*, 946 F.2d 710, 712-13 (9th Cir. 1991)(§2401(a) applies to actions brought under the APA and waiver of sovereign immunity under 5 U.S.C. §702).

[14]  *Novak v. Hall*, 139 F. Supp. 3d 901, 908-09 (N.D. Ill. 2015) (quoting *DeVito v. Chi Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996)); *Strausbaugh v. Bacon,* 737 Fed. Appx. 821, 823 (9th Cir. 2018) ("Qualified immunity...does not constitute a bar to equitable relief.").

## III. Facts.

### A. Facts relating to Basey's FOIA and *Brady* claims.

#### 1. Standard operating procedures for investigations involving crimes under 18 U.S.C. §2252.

¶29.   Title 18 U.S. Code Section 2252(a) criminalizes various activities pertaining to depictions that involve the use of a *real/actual* minor engaging in sexually explicit conduct and depict an *actual/real* minor engaging in sexually explicit conduct. 18 U.S.C. §2252(a).

¶30.   The Government is required to prove beyond a reasonable doubt in prosecutions under §2252(a) that the alleged minor or minors depicted in the image or images is/are real minors—i.e., not computer generated nor an adult who appears to be a minor.[15]

¶31.   To bear this burden of proof in §2252(a) cases, the Government has an established standard process to verify the reality of an alleged minor depicted in an image.[16]

¶32.   First, the Government will determine the "hash" value for the image—a number that acts like a digital fingerprint unique to that image[17]—and

---

[15]   *E.g., U.S. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007).

[16]   *See, e.g., U.S. v. Rodriguez*, 475 F.3d 434, 452 (1st Cir. 2007) (Torruella, J., dissenting) (explaining the government's process to determine reality of minors in §2252 cases).

[17]   *U.S. v. Miknevich*, 638 F.3d 178, 181 n.1 (3d Cir. 2011).

compares this value to other values of images in databases maintained by the FBI and National Center for Missing and Exploited Children.[18]

¶33.  If the image at issue does not match an image contained in these databases involving a known real or actual minor victim, the Government may then employ an expert in the field of image analysis to examine the image and opine as to whether the image depicts a real minor.[19]

¶34.  These experts will not conclusively opine that an image depicts a real minor based on a single image or multiple still images that depict a unique alleged minor.[20]

¶35.  The Government may also seek the assistance of law enforcement officials that are able to testify that the alleged minor(s) depicted in an image are in fact real based on their prior training and/or experience.[21]

¶36.  The Government has also employed experts in the field of visual effects to opine as to the reality of alleged minors in §2252 cases.[22]

---

[18]  *Rodriguez,* 475 F.3d at 453.

[19]  *Id.* at 452-53; *US. v. Frabizio*, 445 F. Supp. 2d 152, 162 (D. Mass. 2016) (same).

[20]  *Rodriguez,* 475 F.3d at 453, *Frabizio*, 445 F. Supp. 2d at 162.

[21]  *E.g., Salcido*, 506 F.3d at 734-35 ("Detective Smith testified that during his investigation in Connecticut, he identified the victim....").

[22]  *E.g., U.S. v. Rearden*, 349 F.3d 608, 613 (9th Cir. 2003).

¶37.   Over two decades ago, in *Ashcroft v. Free Speech Coalition*, the

Government acknowledged that "[v]irtual images...are indistinguishable from

real ones...[and even e]xperts...may have difficulty in saying whether the

pictures were made using real children or by using computer images."[23]

¶38.   Various federal judges are in accord with this sentiment.[24]

¶39.   A recent scientific study shows that humans are able to correctly

distinguish between real and computer-generated faces with only a 48%

accuracy rate.[25]

> **2.     The Government never provided Basey with any
> evidence regarding the reality of the alleged minors
> depicted in the images forming the basis of his convictions
> under §2252(a).**

---

[23]   535 U.S. 234, 254 (2002).

[24]   *U.S. v. Wilder*, 526 F.3d 1, 13-14 (1st Cir. 2008) (Stahl, J., concurring) ("Technological advances in recent years have been such that an untrained eye simply cannot distinguish a photograph of a real person from a virtual image by merely eyeballing the photograph in question."); *Rodriguez*, 475 F.3d at 464 ("It is now beyond scientific dispute that it is possible to create virtual photographic images that can only be detected (with difficulty) by experts.").

[25]   Nightingale & Farid et al., *AI-Synthesized Faces are Indistinguishable from Real Faces and More Trustworthy*, Proc. Nat'l Acad. Sci. USA (2022), available at, doi.org/10.1073/pnas.2120481119.

¶40.  In December 2017, Basey was convicted of one count of transporting and one count of distributing material involving the sexual exploitation of a minor in violation of 18 U.S.C. §2252(a)(1) and (a)(2).[26]

¶41.  Prior to trial, the Government did not provide any information regarding the reality (or lack thereof) of the alleged minors depicted in the images forming the basis of Basey's conviction.[27]

¶42.  The two images forming the basis of Basey's conviction (Trial Exhibits 12 and 13) are concurrently filed under seal with this Complaint in a redacted form that was provided by the Government during discovery and are incorporated as if set forth here as Exhibits G and H. *See* Exhs. G&H (under seal); Crim. Dkt. 261 at 89 (introduction of distribution-count image at trial); *id.* At 100-01 (introduction of transportation-count image).

¶43.  At Basey's trial, the Government did not provide any evidence that the alleged minors depicted in Exhibits G and H were real/actual minors (aside from the images themselves). *See* Crim. Dkt. 261 at 89, 100-01.

¶44.  The primary Government agent charged with investigating the Basey case was FBI agent Jolene Goeden.

---

[26]  Crim. Dkt. 214 (Jury Verdicts).

[27]  Exh. J at ¶1 (Basey Decl.).

Basey v. Reardon
Compl.                                                                11

¶45.   The primary Government prosecutor on the Basey case was AUSA
Kyle Reardon.

¶46.   Given the Government's standard process it uses in every §2252
prosecution to determine the reality of alleged minors depicted in images and
given the Government's burden of proof to carry on the reality-of-the-minor
element, the failure to produce any evidence besides the images themselves
on that element creates an inference that the Government did conduct its
usual investigative procedures, but the results were favorable to Basey.[28]

¶47.   Since the images at issue were in the Government's possession and
Basey and his counsel had no way of testing the images themselves to
determine whether the images matched any known real minor victims, it was
"peculiarly within the [Government's] power" to obtain any information
regarding the alleged reality of the alleged minors depicted in Exhibits
G and H.

¶48.   Given the paucity of evidence submitted at trial on the
reality-of-the-minor elements of Basey's charges—essentially, the images
themselves—any information tending to disprove the alleged minors reality
would have had a reasonable likelihood of causing an acquittal.

---

[28]   *See U.S. v. Charles*, 738 F.2d 686, 698 (5th Cir. 1984) ("In general, the
failure to produce a favorable witness or other evidence when it is peculiarly
within a party's power to do so creates an inference that the witness'
testimony [or the evidence] will be unfavorable.") (my alteration).

¶49. Thus, Basey believes—based upon this reasonable inference—**that the Government is withholding exculpatory information regarding the lack of proof** of the reality of the alleged minors depicted at his trial all in **violation of** *Brady v. Maryland*, 33 U.S. 83 (1963).

### 3. Basey's prior FOIA case in Alaska.

¶50. In *Basey v. Dep't of the Army*, Basey filed a FOIA request for "records associated with FBI case number 3051-AN-5401337."[29]

¶51. In the ensuing FOIA case, this Court granted the DOJ summary judgment on the basis that the disclosure of certain withheld records could interfere with Basey's ongoing criminal case.[30]

¶52. After Basey's criminal proceedings ended, Basey filed a motion to reopen the FOIA case on the basis that there was no longer an ongoing proceeding that disclosure could interfere with.[31]

¶53. Ultimately, this Court declined to reopen the case and acknowledged that Basey could obtain the sought after information in "a new FOIA request,

---

[29] Compl. at ¶18, *Basey v. Dep't of the Army*, No. 4:16-cv-00038-TMB (D. Alaska) ECF No. 1.

[30] *Basey v. Dep't of the Army*, 2018 U.S. Dist. LEXIS 227506 (D. Alaska May 14, 2018).

[31] ECF No. 45 (Mot. Reopen Case).

which the FBI can now fully consider in light of the completion of Basey's criminal proceeding...."[32]

¶54. The Government's failure to produce any evidence regarding the reality of the alleged minors depicted in images introduced at Basey's trial coupled with the DOJ's invocation of a FOIA Exemption enabling it to withhold information that could interfere with a criminal prosecution—when viewed together—creates an inference that the information withheld in Basey's prior FOIA suit may be exculpatory information that could have interfered with its ongoing case against Basey.

### 4. Basey submits a new FOIA request.

¶55. DOJ rules allow FOIA requests to be sent to its FOIA Mail Referral Unit via email at MRUFOIA.Requests@usdoj.gov. *See* 28 C.F.R. §16.3(a)(2).

¶56. On January 10, 2023, Basey caused to be sent a FOIA request and verification of his identity as the requester to the above-mentioned MRUFOIA email address by having his fiancée, Loretta Gaines, send these two things using her personal email address. *See* Exh. A. (Basey's Jan. 10, 2023, FOIA request); Exh. B. (Basey's verification of identity).

---

[32] ECF No. 49 at 6-7 (Order on Plaintiff's Mot. to Reopen Case).

¶57.  Basey's verification of identity complied with DOJ regulation 28 C.F.R. §16.41(d) as it included Basey's full name, current address, his **place and date** of birth, and was signed by him under penalty of perjury.

¶58.  The body of the FOIA request email also contained a sign-off indicating Basey was the requester of the records.

¶59.  The FOIA request sought all records pertaining to:[33]

- Records previously withheld under FOIA exemption 7(A) in *Kaleb Lee Basey v. Dept. of the Army*, No. 4:16-cv-00038-TMB (D. Alaska). These records are associated with FOIA request number: 1358015 and FOIA appeal number: DOJ-AP-2016-005673.

- **Records associated with FBI case No. 305I-AN-5401337** which is a case associated with Kaleb Lee Basey, that pertain to the DOJ/FBI's efforts to determine whether images seized from Basey's Yahoo email account (swingguy23@yahoo.com) depicted real minors. This may include records from the National Center for Missing and Exploited Children ("NCMEC") or records from the FBI's Forensic Audio Video and Image Analysis Unit ("FAVIAU") opining on whether the image(s) depict real minors.

- DOJ guidance, standard operating procedures ("SOPs"), training manuals, and similar material regarding how determinations of the reality of alleged minors and images in cases under 18 U.S.C. §2252 are made.

- Communications between any DOJ personnel (e.g., FBI agents, AUSAs, etc.) regarding FBI case No. 305I-AN-5401337 (the Kaleb Basey investigation) that have the following keywords:

---

[33]  Exh. A. (Basey's Jan. 10, 2023, FOIA request); Exh. B (Basey's verification of identity).

Basey v. Reardon
Compl.

15

"NCMEC", "FAVIAU", "real", "reality", "virtual", "fake", "**not real**", "photoshop", "photoshopped", "composite", "composited", "**FOIA**", "FOIPA", "Brady". "Communications" means any word-searchable memorialized record of communication including text messages, emails and correspondence. Likely authors/recipients include: Jolene Goeden, Kyle Frederick Reardon, Andrea Whittier Hattan, Holly Steeves.

¶60. MRUFOIA sent a timely notice on January 12, 2023, indicating it would forward the FOIA request to the appropriate DOJ components.[34]

### 5. FOIA Request#: EOUSA-2023-000927.

¶61. On January 18, 2023, the EOUSA sent a letter to Basey's prison address—the address Basey gave in his verification of identity—indicating it received his FOIA request.[35]

¶62. The letter gave a tracking number (EOUSA-2023-000927) and said the time limit for its response as being extended beyond the ten-day statutory period for "unusual circumstances."[36]

¶63. Agencies normally have a 20-working-day period to respond to FOIA requests that may be extended to 30 working days for "unusual circumstances" if notice is given to the records requester. 5 U.S.C. §552(a)(6)(B)(i).

---

[34] Exh. C. (MRUFOIA's Jan. 12, 2023, notice).

[35] Exh. D. (EOUSA's Jan. 18, 2023, receipt letter).

[36] *Id.*

¶64. "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies."[37]

¶65. The extended 30-working-day period for request EOUSA-2023-000927 expired on March 6, 2023.

¶66. As of the date of filing this Complaint—which is past March 6, 2023—Basey has not received a response from the EOUSA regarding EOUSA-2023-000927.

¶67. Thus, Basey has constructively exhausted his administrative remedies with respect to EOUSA-2023-000927.

¶68. The EOUSA put "Self/AK" in the "Subject of the Request" area at the top of its January 18 receipt letter indicating the EOUSA knew that Basey was requesting information about himself and his criminal case in Alaska.

### 6. FOIA Request#: 1358015-001.

¶69. On January 24, 2023, the FBI sent a response letter addressed to Loretta Gaines—Basey's fiancée who forwarded his FOIA request and verification of identity to MRUFOIA.[38]

---

[37] *Citizens for Responsibility & Ethics in Wash. v. FEC ("CREW")*, 711 F.3d 180, 185 (D.C. Cir. 2013).

[38] Exh. E (FBI's Jan. 24, 2023, response letter).

¶70.  The FBI assigned Basey's January 10 FOIA request a number (1358015-001) that was associated with a FOIA request number in Basey's previous FOIA case *Basey v. Dep't of the Army*.[39]

¶71.  Despite the EOUSA's acknowledgement that Basey was seeking records about himself, *see* ¶68, the FBI treated Basey's January 10 FOIA request as if Loretta Gaines was requesting information about Basey.

¶72.  Ms. Gaines, however, was not the requester and merely acted as an intermediary by forwarding Basey's FOIA request and was designated by Basey as a person who could receive response material to his request on his behalf.[40]

¶73.  Nevertheless, the FBI invoked FOIA Exemptions (b)(6) and (b)(7)(C) reasoning that Ms. Gaines could not obtain the sought-after records because they pertained to one or more third parties.[41]

¶74.  But since Ms. Gaines was not the FOIA requester, these Exemptions should not have been invoked as Basey was seeking information regarding himself having properly verified his identity in accordance with DOJ regulations.

---

[39]  Exh. A (noting Basey's prior FOIA request number was 1358015).

[40]  *Id.*

[41]  Exh. E (FBI's Jan. 24, 2023, response letter).

¶75.   Basey administratively appealed on the following ground:[42]

- First, the denial letter incorrectly identified the requester as my fiancée, Loretta Gaines. As my January 10, 2023, FOIA request clearly states, I, Kaleb Lee Basey, am the requester. *See* Attachment A (Jan. 10, 2023, FOIA request). To clarify this point, my sworn verification of identity accompanied my request in accordance with 28 C.F.R. §16.41(d). *See* Attachment B (verification of identity). And since the records sought pertaining to FBI case number 3051-AN-5401337 are about me (Kaleb Lee Basey, not a third party) and I have essentially waived my rights to privacy by submitting my sworn verification of identity, Exemptions (b)(6) and (b)(7)(C) are inapplicable. *See Sussman v. U.S. Marshals Service,* 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("[I]f Maydak waived his privacy interest under FOIA, the Marshals Service cannot withhold materials concerning him based on Exemption 7(c).").

- Second, the denial letter does not state whether any reasonable segregable portions of the records could be provided with redactions in accordance with 5 U.S.C. §552(b). *See, e.g., Church of Scientology v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979) ("There is no longer any question that the doctrine of segregability applies to...the exemptions under the [FOIA]....").

- Third, many documents pertaining to FBI case No. 3051-AN-5401337 were previously released through FOIA in *Basey v. Dep't of the Army,* No. 4:16-cv-00038-TMB, 2018 U.S. Dist. LEXIS 227506 (D. Alaska May 14, 2018). Thus, Exemptions (b)(6) and (b)(7)(C) are inapplicable due to prior disclosure. (Note that the prior FOIA request # associated with this information was 1358015 which is identical to the number associated with the instant request.

- Fourth, since this request involved the same records at issue in *Basey v. Dep't of the Army,* No. 4:14-cr-00038-TMB, the doctrine of estoppel bars the agency from asserting new grounds for exemptions not previously raised in prior litigation.

---

[42]   Exh. F (Basey's Feb. 2, 2023, administrative appeal).

Basey v. Reardon
Compl.

- Fifth, there are likely other records regarding FBI case **number** 3051-AN-5401337 that do not pertain to third parties, **personnel** files, or medical information and thus not exempt under Exemptions (b)(6) and (b)(7)(C). For instance, there are likely records that show images in Kaleb Basey's swingguy23@yahoo.com email account could not be traced **to any** known images of child pornography involving real minors. Such records would not be about third parties (since I, Kaleb Basey, am the requester) and would not contain information about other people.

¶76. Basey caused this administrative appeal to be timely sent electronically through the FBI/DOJ web portal on February 2, 2023.[43]

¶77. Under 5 U.S.C. §552(a)(6)(A)(ii) the FBI had 20 working days to make a determination on Basey's appeal.

¶78. Over 20 working days have elapsed since Basey submitted the appeal and the FBI has not made a determination on Basey's appeal.

¶79. Thus, Basey has constructively exhausted his administrative remedies with respect to request #: 1358015-001.[44]

### B. Facts relating to Basey's Rule 60(d)(1) claims regarding prior COA proceedings in this District.

### 1. The nine-month warrantless preservation of Basey's Yahoo emails under 18 U.S.C. §2703(f).

---

[43] *Id.*

[44] *CREW,* 711 F.3d at 185.

¶80.  In January 2014, Basey was a soldier stationed at Ft. Wainwright, Alaska.[45]

¶81.  On January 18, 2014, Basey's computer and iPhone were illegally seized from his barracks room on Ft. Wainwright by the Army Criminal Investigation Division ("CID") and Alaska State Troopers ("AST").[46]

¶82.  Basey was arrested and taken to CID headquarters where Agent Shanahan induced Basey to admit that his computer contained child pornography by confronting Basey with the illegally seized computer.[47]

¶83.  This confession was later deemed to be tainted fruits of the illegal seizure of Basey's electronic devices and subject to the exclusionary rule.[48]

¶84.  The next day, the AST took custody of Basey's property and performed a digital forensic examination of the devices.[49]

¶85.  On January 25, 2014, Basey went to the Noel Wien Public Library in

---

[45]  Exh. J at ¶2 (Basey Decl.).

[46]  Crim. Dkt. 160 at 17.

[47]  *Id.* at 22, 30-39.

[48]  *Id.*

[49]  *Id.* at 25-26; Crim. Dkt. 80 at 102 (Evid. Hrg. Tr.); Crim. Dkt. 296-6 at 8-11 (AST Supplementary Report).

Basey v. Reardon
Compl.                                                                                        21

Fairbanks, Alaska, and deleted every email in his swingguy23@yahoo.com email account and then deleted the account itself.[50]

¶86. On February 6, 2014, a CID report indicates investigators intended to preserve Basey's swingguy23@yahoo.com account because they believed it was used "to view/distribute child pornography."[51]

¶87. On February 7, 2014, Agent Shanahan sent a preservation letter under 18 U.S.C. §2703(f) to Yahoo for Basey's swingguy23@yahoo.com account.[52]

¶88. On February 11, 2014, Yahoo sent the CID confirmation that Basey's account was preserved.[53]

¶89. On. February 20, 2014, CID Supervising agent Heriberto Rodriquez wrote: "Ok so we preserved [Basey's] account. We are pending the results of the forensic exams to support [probable cause] for a warrant."[54]

¶90. When Yahoo receives 2703(f) letters, Yahoo creates a "snapshot" of

---

[50] Crim. Dkt. 296-48 at ¶4 (Basey Decl.); Crim. Dkt. 296-5 (Yahoo IP address log).

[51] Crim. Dkt. 296-2 (CID Agent's Activity Summary).

[52] *Id.*; Crim. Dkt. 172 at 9 (the Government admits "such a letter was sent to Yahoo").

[53] Crim. Dkt. 296-2 (CID Agent's Activity Summary).

[54] Crim. Dkt. 296-3 (CID Agent's Activity Summary).

Basey v. Reardon
Compl.

22

the user's account which is "a copy of all the contents of a user's Yahoo mail account at a given moment in time."[55]

¶91.  Deleted emails that have not yet been removed from Yahoo's servers are preserved as well.[56]

¶92.  Once a user deletes his Yahoo emails or account, they are normally removed completely from Yahoo's servers within 40 days in the normal course of business.[57]

¶93.  On November 20, 2014, FBI agent Goeden obtained a search warrant for Basey's Yahoo emails.[58]

## 2. Indictment, conviction, direct appeal, and post-conviction proceedings.

¶94.  Basey was ultimately charged with two counts relating to two images obtained from his preserved Yahoo emails.[59]

---

[55]  Crim. Dkt. 296-10 at 8(Yahoo's Response to Petitioner Russell Knaggs' Special Interrogatories to Yahoo!, Inc., *Knaggs v. Yahoo, Inc.*, No. 5:15-mc-80281-PSG, ECF No. 13-1 at 30 (N.D. Cal. Jan. 16, 2016)).

[56]  *Id.*

[57]  Crim. Dkt. 296-11 (Yahoo's Data Storage Policy) ("If you ask Yahoo to delete your account, in most cases your account will be deactivated and deleted from our user registration database in approximately 40 days...."); Crim. Dkt. 296-45 (email from Yahoo customer service representative to Loretta Gaines).

[58]  Crim Dkt. 172-1 at 1 (Yahoo Search Warrant).

[59]  Crim. Dkt. 101 (Superseding Indictment).

¶95. Basey was convicted in December 2017 on the basis of the two images obtained from his preserved Yahoo emails.[60]

¶96. Redacted versions of the two images are concurrently filed under seal with this Complaint as Exhibits G and H.

¶97. In his direct appeal, the Ninth Circuit found that Basey's counsel had waived the opportunity to file a motion to suppress Basey's emails on the basis of their preservation under 18 U.S.C. §2703(f).[61]

¶98. On April 23, 2020, Basey timely filed a post-conviction relief motion under 28 U.S.C. §2255 alleging that his counsel was ineffective for refusing or failing to timely move for suppression of his Yahoo emails.[62]

¶99. Basey attached and incorporated a Statement of Facts[63] and Memorandum of law to his §2255 Motion that expounded on his allegations of ineffective counsel by outlining two ways his attorneys could have challenged

---

[60] Crim. Dkt. 261 at 88 (Trial Day 2 Tr.) (evidence re distribution count); *id.* At 98-100 (evidence re transportation count).

[61] *U.S. v. Basey,* 784 Fed. Appx. 497, 498-99 (9th Cir. Aug. 5, 2019).

[62] Crim. Dkt. 294 at 4 (§2255 motion) ("I told my first attorney, M.J. Haden, to file a motion to suppress challenging the 9-month warrantless seizure of my emails....").

[63] Crim. Dkt. 295 at 11 ("March 30, 2016: Basey tells Haden that the preservation of his email account under 2703(f) amounted to a seizure and he mentioned a law review article by Orin S. Kerr that supported this.").

the preservation of his Yahoo emails: (1) as an illegal seizure and (2) as an illegal search.[64]

¶100.  On April 13, 2023, this Court denied Basey's §2255 motion on the merits of some of the Fourth Amendment issues Basey alleged his attorneys failed to raise and this Court did not consider.[65]

¶101.  This Court did not conduct any analysis of whether Basey's counsel had reasonable strategic reasons for declining to file a motion to suppress his emails and limited its review to the merits of the Fourth Amendment issues.[66]

¶102.  This Court acknowledged in Section II.C.1. of its order that Basey raised search *and* seizure arguments regarding §2703(f) in his §2255 filings, yet only addressed Basey's seizure argument as the order lacks any subheading in Section II.C. dealing with §2703(f) preservation as a search.

¶103.  This Court denied Basey a COA on all issues in a single sentence: "Finally, because Defendant has failed to make a substantial showing of the denial of a constitutional right, and reasonable jurists could not find

---

[64]  Crim. Dkt. 296 at 49-51 (outlining the search and seizure arguments Basey's counsel could have made).

[65]  *U.S. v. Basey*, 2021 U.S. Dist. LEXIS 70988 (D. Alaska April 13, 2021).

[66]  *Id.*

otherwise, the Court declines to grant a Certificate of Appealability pursuant to 28 U.S.C. §2253(c)."[67]

¶104.   This sentence (in the paragraph immediately above) is an incorrect statement of the standard for deciding whether a COA can be granted.

¶105.   This Court did not cite any case law that discusses the correct standard for making a COA determination

¶106.   A proper COA determination requires the court to consider the "*debatability* of the underlying constitutional claim, not the resolution of the debate"[68] as claims may "be *debatable* even though every jurist might agree...that [Basey] will not prevail."[69]

¶107.   A COA proceeding in a §2255 case is a separate and distinct proceeding from the ruling on the merits of the constitutional issues.[70]

¶108.   An order denying a COA functions as a separate and distinct order within the §2255 case. *Id.* at 342.

¶109.   An order denying a COA may, thus, be challenged in an independent action under Fed. R. Civ. P. Rule 60(d)(1).

_____

[67]   *Id.* at *15.

[68]   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (emphasis added).

[69]   *Id.* at 342 (my emphasis and alteration).

[70]   *See id.*

Basey v. Reardon
Compl.                                                                                      26

### 3. Basey attempts to correct this Court's deficient COA ruling.

¶110.  Basey timely sought a COA from the Ninth Circuit.[71]

¶111.  Basey's Motion for a COA raised merits-related issues and a procedural-related issue stemming from the district court's failure to address certain issues raised in Basey's §2255 motion.[72]

¶112.  The Ninth Circuit's boilerplate denial denied Basey a COA on the procedural-related issue and did not address the merits-related issues as made evident by its use of a standard use for COA decisions on procedural-related issues.[73]

¶113.  Basey petitioned for a rehearing specifically on the overlooked §2703(f)-related issues, but was again summarily denied.[74]

¶114.  Basey sought and was denied a petition for a writ of certiorari on the §2703(f)-related Fourth Amendment issues.[75]

---

[71]  *See* Crim. Dkt. 384 (Notice of App.); Mot. for COA, *U.S. v. Basey*, No. 21-35554 (9th Cir. July 27, 2022) ECF No. 3.

[72]  Mot. for COA, *supra* at 6-29 (merits-related issues); *id.* at 30-33 (procedural-related issue).

[73]  Order, *U.S. v. Basey,* No. 21-35554 (9th Cir. Jan. 18, 2022) ECF No. 7.

[74]  *U.S. v. Basey*, 2022 U.S. App. LEXIS 2751 (9th Cir. Jan. 31, 2022).

[75]  *Basey v. U.S.*, No. 21-7274.

¶115.  Basey petitioned for mandamus requesting the Ninth Circuit to force this Court to conduct a proper COA analysis account for the debatability of the constitutional issues Basey raised.[76]

¶116.  That petition was also denied.[77]

¶117.  Basey sought and was denied certiorari on his mandamus petition.[78]

¶118.  Basey lacks an adequate remedy at law to fix this Court's erroneous COA ruling that did not consider or apply the appropriate standard regarding the debatability issues.

### 4.  Reasonable jurists have debated that preservation of emails under 18 U.S.C. §2703(f) may violate the Fourth Amendment.

¶119.  In 2010, a law professor—Orin S. Kerr—wrote a law review article that said, "a government request to an ISP to make a copy of a suspect's remotely stored files and to hold it while the government obtains a warrant would constitute a seizure."[79]

---

[76]  *In re Basey*, No. 22-70116 (9th Cir. June 13, 2022) ECF No. 1-3.

[77]  *In re Basey*, 2022 U.S. App. LEXIS 19237 (9th Cir. July 12, 2022).

[78]  *Basey v. U.S. Dist. Ct.*, No. 22-5587.

[79]  Kerr, *Fourth Amendment Seizures of Computer Data,* 119 Yale L.J. 700, 723-24 (2010).

Basey v. Reardon
Compl.

28

¶120.  In 2016, Kerr wrote an article in the *Washington Post* discussing in greater detail how §2703(f) preservation of emails could become an unreasonable seizure under the Fourth Amendment.[80]

¶121.  In 2018, Kerr used his Twitter account to notify his followers that Basey was challenging the §2703(f) preservation of his emails in his direct appeal.[81]

¶122.  One of the individuals who "liked" Kerr's Twitter post was Jennifer Stisa Granick, an attorney who resided in the San Francisco Bay area who was a member of the American Civil Liberties Union ("ACLU").

¶123.  On February 19, 2019, the ACLU filed an amicus curiae brief in Basey's appeal that was joined in by the ACLU of Alaska Foundation.[82]

¶124.  Page 28 of the ACLU's brief concludes like this: "Mr. Basey's emails were warrantlessly seized for nine months, an unreasonable amount of time for law enforcement to interfere with an individual's constitutional interest in these private and personal digital papers."

---

[80]  Kerr, *The Fourth Amendment and Email Preservation Letters,* Washington Post (Oct. 28, 2016) available at https://wapo.st/2U6hiKj.

[81]  Exh. K (Kerr's 2018 Twitter post).

[82]  Br. of Amici Curiae ACLU, *U.S. v. Basey,* No. 18-30121 (9th Cir. Feb. 19, 2019) ECF No. 31 *available at* 2019 WL 829338.

Basey v. Reardon
Compl.

29

¶125.   Page 28 of the ACLU's brief also indicates that Jennifer Granick and Brett Max Kaufman—a law professor at New York University—were signatories of the brief.

¶126.   In 2019, Kerr posted another tweet saying that Basey's promising case was coming up for oral argument.[83]

¶127.   For oral argument in Basey's direct appeal, Professor Kaufman was permitted to speak in Basey's favor.[84]

¶128.   In 2020 an adjunct law professor at George Mason—Armin Tadayon—wrote a 44-page law review article on the use of §2703(f) that examined arguments on both sides of the debate regarding whether §2703(f) implicates the Fourth Amendment and, if so, whether such preservation may be unreasonable.[85]

¶129.   Tadayon's article references the ACLU's amicus brief filed in Basey's criminal appeal multiple times.[86]

---

[83]   Exh. L (Kerr's 2019 post).

[84]   Oral argument, *U.S. v. Basey,* No. 18-30121 available at https://bit.ly/38wVOPE.

[85]   Tadayon, *Preservation Requests and the Fourth Amendment*, 44 Sea. U.L. Rev. 105 (Fall 2020).

[86]   *Id.* at 147 &n. 226.

¶130.   Tadayon's article on §2703(f) has been cited in at least four other scholarly publications according to a Google search of the citation for the article conducted in April 2023. Exh. M (Google results for Tadayon article).[87]

¶131.   The following individuals are reasonable jurists:

   a.  Orin S. Kerr.

   b.  Jennifer Granick

   c.  Brett Max Kaufman, and

   d.  Armin Tadayon.

## 5.  Reasonable jurists have debated whether digital duplication constitutes a Fourth Amendment seizure.

¶132.   When Yahoo receives 2703(f) letters, Yahoo creates a "snapshot" of the user's account which is a digital duplication or "copy of all the contents of a user's Yahoo mail account at a given moment in time."[88]

¶133.   Many jurists agree that digital duplication is a Fourth Amendment seizure.[89]

---

[87]  Exh. M (Google results for Tadayon article citation).

[88]  Crim. Dkt. 296-10 at 8.

[89]  *E.g.,* Note, *Digital Duplication and the Fourth Amendment*, 129 Harv. L. Rev. 1046 (2016); Taticchi, *Redefining Possessory Interests: Perfect Copies of Information as Fourth Amendment Seizures*, 78 Geo. Wash. L. Rev. 476, 496 (2010) ("The Supreme Court should hold that perfectly duplicating information seizes the information because it deprives the information's owner of her right to exclude others from it."); Maureen Brady, *The Lost "Effects" of the Fourth Amendment: Giving Personal Property Due Protection*, 125 Yale L.J. 946, 999 n. 236 (2016) ("The idea that data is an effect is highly

¶134.  Justice Gorsuch signaled that duplication of emails implicates **the** Fourth Amendment by skeptically posing this question in his *U.S. v. Carpenter* dissent: "Can the government demand a copy of all your emails...without implicating your Fourth Amendment rights?"[90]

## IV.  Claims for relief.

### A.  FOIA Claims.

**Claim One: The DOJ and EOUSA are wrongfully withholding agency records in violation of the FOIA.**

¶135.  Basey incorporates by reference all of the prior paragraphs as if set forth here.

---

contested position...."); Paul Ohm, *The Olmsteadian Seizure Clause: The Fourth Amendment and the Seizure of Intangible Property (Abridged)*, 2008 Stan. Tech. L. Rev. 1, ¶34 (2008) ("in [*Arizona v.*] *Hicks*, the Court was wrong about the seizure, and the cases which follow its dictum have incorrectly concluded the Seizure Clause does not apply to copies of intangible data."); Ohm, *The Fourth Amendment Right to Delete*, 119 Harv. L. Rev. F. 10 (2005) ("Modern-day police...have tools that duplicate stored records...all from a distance and without need for physical entry....[I]t is unclear whether the Fourth Amendment's restrictions apply to those technologies: Are the acts of duplication and collection themselves seizure?"); Butler, *Get a Warrant: The Supreme Court's New Course for Digital Privacy Rights after* Riley v. California, 10 Duke J. Const. L. & Pub. Pol'y 83, 112 (2014).

[90]  138 S. Ct. 2206, 2262 (2018) (Gorsuch, J., dissenting).

Case 3:23-cv-00124-SLG   Document 1   Filed 06/08/23   Page 32 of 67

¶136.  FOIA claims have 3 elements: an agency must (1) improperly; (2) withhold from the requester; (3) agency records. *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983).

¶137.  The DOJ and its component, EOUSA, are improperly withholding agency records from Basey in request #: EOUSA-2023-000927.

¶138.  Since Basey has not received a response within the extended 30-day time period, he has constructively exhausted his administrative appeal remedies and is entitled to judicial review and supervision over the Defendant's compliance with his FOIA request under 5 U.S.C. §552 (a)(4)(B).

¶139.  Basey does not concede "unusual" or "extraordinary" circumstances exist under 5 §(a)(6)(B)(i) - (iii)

## Claim Two: The DOJ and FBI are wrongfully withholding agency records in violation of FOIA.

¶140.  Basey incorporates by reference all of the preceding paragraphs as if set forth here.

¶141.  The DOJ and its component, FBI, are improperly withholding agency records from Basey in request #: 1358015-001.

¶142.  The records are improperly being withheld as the FBI and DOJ are improperly invoking FOIA exemptions 6 and 7(C).

¶143.  For the reasons set forth in Basey's administrative appeal (Exh. F), which is incorporated as if set forth here, those exemptions are inapplicable.

¶144.   Since the 20-working-day period of time for responding to Basey's administrative appeal has expired without a response, Basey has constructively exhausted his administrative appeal and he is entitled to judicial review of the denial of request #: 1358015-001 under 5 U.S.C. §552(a)(4)(B).

## B.  Independent Equitable Action Claims under Rule 60(d)(1).

¶145.   The elements of an independent action are:

> (1) a [order] which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which [order] is founded; (3) fraud, accident, or mistake which prevented the defendant in the [order] from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.[91]

¶146.   Independent actions under Rule 60(d)(1) are generally treated the same as motions under Rule 60(b).[92]

¶147.   Thus Rule 60(d)(1) action may seek relief from a judge's error.[93]

---

[91]   *Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (my alterations). Basey's Rule 60(d)(1) claims use substantially similar language from *Buckenberger v. Nielsen* that are more appropriate for this case. 2015 U.S. Dist. LEXIS 113945, *24 (E.D. La. July 9, 2015).

[92]   *Nevada VTN v. Gen. Ins. Co. of Am.*, 834 F.2d 770, 775 (9th Cir. 1987).

[93]   *See Kemp v. U.S.*, 2022 U.S. LEXIS 2835, *5 (2022) (allowing Rule 60(b) motion for judge's mistake of law).

¶148.   A Rule 60(d)(1) may also seek relief for an order premised on a due

process violation that renders the order void.[94]

**Claim Three: Basey should be relieved of this Court's prior COA
order and/or proceeding as it was premised on a mistake of law.**

¶149.   Basey incorporates by reference any prior paragraph.

***Element one: An order that ought not, in equity and good
conscience, be enforced.***

¶150.   This Court's order denying Basey a COA in his §2255 case ought not,

in equity and good conscience, be enforced as it is premised on a mistake of

law.[95]

¶151.   This Court's mistake of law was that it failed to consider and decide

whether reasonable jurists could *debate* the resolution of the merits of

Basey's claims for relief.[96]

¶152.   This failure to apply the appropriate standard is shown by:

   a. this Court's failure to use the word "debatability", or a permutation of
      it, or a synonym (e.g., argue);

---

[94]   *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)
(Rule 60(b)(4) encompasses orders "premised [] on a ...violation of due
process...."); *Johnson v. IRS,* 2021 U.S. Dist. LEXIS 141281, *12-13 (D. Utah
Jan. 29, 2021) ("[A] motion seeking relief under Rule 60(b)(4)...may also be
brought as an independent action.").

[95]   *U.S. v. Basey*, 2021 U.S. Dist. LEXIS 70988, *15 (D. Alaska April 13,
2021).

[96]   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *id.* at 342 (the ultimate
question is debatability of the underlying claim, not the resolution of the
debate).

b. this Court failed to cite any case law in denying the COA,

c. the inclusion of Tadayon's law review article—on the page immediately before the COA decision; and

d. this Court's prior failure's to apply the appropriate debatability standard in COA decisions (discussed further below).

¶153. Judge Beistline—Basey's district judge—made deficient COA rulings in other cases that omitted the consideration of debatability:

- *Mark v. Houser*, 2021 U.S. Dist. LEXIS 207658, *2 (D. Alaska Nov. 29, 2021) ("A [COA] shall not issue."; no citations or mention of standards, just that one sentence).

- *Quinn v. Houser*, 2021 U.S. Dist. LEXIS 149530, *1 (D. Alaska Aug. 10, 2021) (dismissed habeas petition without requisite COA ruling).

- *U.S. v. Gadson*, 2018 U.S. Dist. LEXIS 228936, *1 (D. Alaska Dec. 19, 2018) (dismissed 2255 motion without COA ruling).

- *U.S. v. Thomas*, 2013 U.S. Dist. LEXIS 206264, *1 (D. Alaska Nov. 13, 2013) (omits debatability analysis in COA ruling).

- *Notesline v. Houser*, 2021 U.S. Dist. LEXIS 7455 (D. Alaska April 19, 2021) (dismissed habeas petition with no COA ruling).

- *U.S. v. Hayes,* 2013 U.S. Dist. LEXIS 200207, *3 (D. Alaska Oct. 1, 2013) (no debatability analysis).

¶154. Alternatively, assuming this Court did apply the appropriate debatability analysis in its COA determination, the ruling was nevertheless mistaken because the existence of material created by reasonable jurists

regarding §2703(f) preservation as a Fourth Amendment seizure. *See* **Part III. B. 1-2, ¶¶119-134 above.**[97]

¶155.   Because the COA order is premised on a mistake of law, it should be, in equity and good conscience, vacated.

### *Element Two: Basey had a meritorious claim for a COA in the underlying proceeding.*

¶156.   Because reasonable jurists have debated whether §2703(f) preservation of emails in general, and Basey's emails in particular, may become unreasonable under the Fourth Amendment, Basey had a meritorious claim for obtaining a COA on the §2703(f)-related Fourth Amendment issues in his §2255 filings.[98] *See* ¶¶119-134 above.

### *Element Three: Mistake preventing Basey from obtaining a COA in the underlying proceeding.*

¶157.   This Court's failure to apply the appropriate debatability standard in making the COA decision below and/or its failure to acknowledge that reasonable jurists have debated the §2703(f)-related Fourth Amendment issues was a mistake that prevented Basey from obtaining a COA.

---

[97]   *See also McGee v. Bartow*, 2007 U.S. Dist. LEXIS 69390, *2 (E.D. Wis. Sept. 17, 2007) (granting COA where a "favorable law review article" exists that made similar conclusions to petitioner's).

[98]   *Id.*

***Element Four: Basey lacks fault or negligence in the mistake.***

¶158.   Basey lacks fault or negligence because Basey took appropriate and reasonable measures to remedy the mistake by (1) seeking a COA from the Ninth Circuit and Supreme Court and (2) petitioning for a writ of mandamus to force this Court to perform a correct COA analysis.

***Element Five: Basey lacks any adequate remedy at law.***

¶159.   Basey lacks an adequate remedy at law because:

    a.  Basey could not appeal the deficiency of the district court's COA decision, but could only obtain a *de novo* COA analysis on his claims for relief by the Ninth Circuit;

    b.  the Ninth Circuit did not actually perform an analysis on Basey's claims for relief, but addressed only a procedural issue, thus denying Basey a full fair opportunity at a second-level COA determination;[99] and

    c.  the chances of obtaining a highly rare, discretionary grant of a petition for a writ of certiorari or a less-rarely-granted petition for mandamus do not provide for as certain a chance at obtaining relief as this independent equitable action.[100]

---

[99]   *See* ¶¶111-113 above.

[100]   *See Am. Life Ins. Co. v. Stewart,* 300 U.S. 203, 214 (1937) (remedy at law must be "equally...certain" as equitable remedy).

***Grave miscarriage of justice.***

¶160.   Courts generally impose a requirement of a showing of a "grave miscarriage of justice" in independent actions seeking relief from a *judgment*—i.e., not an order or proceeding.[101]

¶161.   This has been interpreted to mean a showing of actual innocence in the context of a Rule (60(d)(1) action challenging a judgment in a habeas case.[102]

¶162.   But here, Basey is not challenging a *judgment* in a habeas case, he is challenging the COA *order or proceeding* which the Supreme Court regards as a separate and distinct proceeding from the merits ruling in a habeas case.[103]

¶163.   The grave miscarriage of justice requirement exists out of necessity to overcome the finality of judgments and res judicata, but finality and res judicata have traditionally played less of a role in habeas corpus.[104]

---

[101]   *E.g., Mitchell*, 651 F.3d at 595-96.

[102]   *Id.*

[103]   *Miller-El*, 537 U.S. at 342.

[104]   *See generally* Randy Hertz & James L. Leibman, *Federal Habeas Corpus Practice and Procedure,* 7th Edition §28.2[a] n.3 (collecting cases where habeas petitioners could seek collateral review of their habeas petitions).

¶164. And while Congress has enacted various provisions that bar second or successive §2255 motions, e.g., 28 U.S.C. §2255(h), Congress has not limited the ability to seek review of the COA decisions in habeas proceedings.

¶165. There is no controlling case that directly addresses whether the grave miscarriage of justice requirement may be applied in a Rule 60(d)(1) action challenging an order or proceeding as opposed to a judgment.[105]

¶166. To the extent this Court is inclined to impose a grave miscarriage requirement to this Claim challenging the COA order or proceeding, Basey alleges that there has been a grave miscarriage of justice because:

    a. there is strong reason to believe he is actually innocent of the crimes he was convicted of as explained more fully in Exhibit I which is a copy of Basey's Memorandum of Law in Support of his Application for a Second or Successive §2255 Motion which he incorporates fully as if set forth here,[106]

    b. "[a] bona fide due process...claim would surely clear even this difficult threshold," Basey alleges a bona fide due process claim in Claims 4 - 6 of this Complaint which Basey incorporates as if set forth here.

***This is not a disguised second or successive motion.***

---

[105] *Cf. U.S. v. Corrales-Vasquez*, 931 F.3d 944, 954 (9th Cir. 2019) ("[C]ases are not precedential for propositions not considered.").

[106] Exh. I at Claims, I, IV - VII.

Basey v. Reardon
Compl.

40

¶167. This Claim does not "add a new ground for relief" to a §2255 motion, nor does it "attack a court's previous resolution of a claim on the merits."[107] since COA rulings are "distinct from the underlying merits."[108]

¶168. Rather, this Claim attacks a "defect in the integrity of the" COA proceeding.[109]

¶169. Should this claim be denied, it is not subject to a COA requirement under 28 U.S.C. §2253 as the COA requirement applies only to "final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the prisoner's detention."[110]

**Relief sought.**

¶170. Basey seeks the following relief on this Claim:

    a. a decree relieving Basey of the prior COA ruling, and

    b. a *de novo* COA ruling conducted by this Court.

¶171. Basey suffered and continues to suffer irreparable harm from being denied his government-created right to a full and fair COA proceeding under

---

[107] *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

[108] *Miller-El*, 537 U.S. at 342.

[109] *Gonzalez*, 545 U.S. at 532.

[110] *Harbison v. Bell*, 556 U.S. 180, 173 L. Ed. 2d 347, 354 (2009).

28 U.S.C. §2253 that applies the appropriate case law in making the COA

ruling.

**Claim Four: Basey should be relieved from the COA order and proceeding because this Court denied Basey his property or liberty interest in a full and fair COA proceeding.**

¶172.   Basey incorporates by reference every prior paragraph.

***Element One: An order that ought not, in equity and good conscience be enforced.***

¶173.   This Court's order denying Basey a COA ought not be enforced and

Basey should be relieved from it because it is premised on a violation of due

process that deprived Basey of a full and fair COA proceeding.[111]

¶174.   "To succeed on a procedural due process claim, a plaintiff must show

that (1) he or she was deprived of a protected liberty or property interest, and

(2) the 'deprivation of that interest contravened notions of due process.' "[112]

¶175.   "[A] cause of action is a species of property protected by the...Due

Process Clause."[113]

¶176.   A motion filed under 28 U.S.C. §2255 is considered a cause of action.[114]

---

[111]   *U.S. v. Basey*, 2021 U.S. Dist. LEXIS 70988, *15 (D. Alaska April 13, 2021).

[112]   *Abdulla v. Cuccinelli*, 840 Fed. Appx. 827, 839-40 (6th Cir. 2020).

[113]   *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

[114]   *See Hueso v. Barnhart*, 948 F.3d 324, 327 (6th Cir. 2020).

¶177.  Thus, Basey had a protected property interest in a §2255 motion.

¶178.  Alternatively, Basey has a protected liberty interest in a §2255 motion as a result of the constitutional right to access to habeas corpus or through the Government's creation of §2255.

¶179.  Because the Government has established a right to a COA ruling in §2255 proceedings by enacting 28 U.S.C. §2253(c)(3), Basey also has a protected interest in receiving "an adequate opportunity to present...claims fairly in the context"[115] of the relevant COA process and to "not be denied an appeal for arbitrary reasons"[116] like failure to apply the appropriate law in making a COA ruling.

¶180.  Put differently, because Basey had a property or liberty interest in his §2255 causes of action and the Government created a right to a COA determination under §2253, this Government-created right "beget[s] yet other rights to procedures essential to the realization of the parent right,"[117] including a right to have the COA ruling made in accordance with the relevant case law.

---

[115]  *Ross v. Moffitt*, 417 U.S. 600, 616 (1974).

[116]  *Griffin v. Illinois*, 351 U.S. 12, 37 (1956) (Harlan, J., dissenting).

[117]  *DA's Office v. Osborne*, 557 U.S. 52, 68 (2009).

Basey v. Reardon
Compl.

¶181. Thus, Basey had a protected property or liberty interest in a COA ruling made in accordance with the relevant case law requiring the **court to** assess the debatability of Basey's claims among jurists of reason.[118]

¶182. Basey did not receive a full and fair COA determination due to this Court's failure to apply the appropriate case law regarding debatability, thus, he was denied a property or liberty interest.

¶183. This deprivation contravened due process because a judicial actor failed to comply with the common law regarding COA determinations that require courts to consider the debatability of the claims among reasonable jurists.[119]

¶184. Because this violation of Basey's right to due process deprived Basey of a full and fair hearing in his COA proceeding, the COA order is void and should not be enforced.

### Element Two: Basey had a meritorious claim for a COA in the underlying proceeding.

¶185. Because reasonable jurists have debated whether §2703(f) preservation of emails in general, and Basey's emails in particular, may

---

[118]  *Miller-El*, 537 U.S. at 327, 342.

[119]  *See Dobbs v. Jackson Women's Health Org.,* 142 S. Ct. 2228, 2300 (2022) (" '[D]ue process of law' merely require[s] executive and judicial actors to comply with legislative enactments and the common law when depriving a person of life, liberty, or property....").

become unreasonable under the Fourth Amendment, Basey had a meritorious claim for obtaining a COA on the §2703(f)-related Fourth Amendment issues in his §2255 filings.[120] *See* ¶¶119-134 above.

### Element Three: Mistake preventing Basey from obtaining a COA in the underlying proceeding.

¶186.   This Court's failure to apply the appropriate debatability standard in making the COA decision below and/or its failure to acknowledge that reasonable jurists have debated the §2703(f)-related Fourth Amendment issues was a mistake that prevented Basey from obtaining a COA.

### Element Four: Basey lacks fault or negligence in the mistake.

¶187.   Basey lacks fault or negligence because Basey took appropriate and reasonable measures to remedy the mistake by (1) seeking a COA from the Ninth Circuit and Supreme Court and (2) petitioning for a writ of mandamus to force this Court to perform a correct COA analysis.

### Element Five: Basey lacks any adequate remedy at law.

¶188.   Basey lacks an adequate remedy at law because:

   a. Basey could not appeal the deficiency of the district court's COA decision, but could only obtain a *de novo* COA analysis on his claims for relief by the Ninth Circuit;

   b. the Ninth Circuit did not actually perform an analysis on Basey's claims for relief, but addressed only a procedural issue, thus denying

---

[120]   *Id.*

Basey v. Reardon
Compl.

Basey a full fair opportunity at a second-level COA determination;[121] and

c. the chances of obtaining a highly rare, discretionary grant of a petition for a writ of certiorari or a less-rarely-granted petition for mandamus do not provide for as certain a chance at obtaining relief as this independent equitable action.[122]

### *Grave miscarriage of justice.*

¶189.   Courts generally impose a requirement of a showing of a "grave miscarriage of justice" in independent actions seeking relief from a *judgment*—i.e., not an order or proceeding.[123]

¶190.   This has been interpreted to mean a showing of actual innocence in the context of a Rule (60(d)(1) action challenging a judgment in a habeas case.[124]

¶191.   But here, Basey is not challenging a *judgment* in a habeas case, he is challenging the COA *order or proceeding* which the Supreme Court regards as a separate and distinct proceeding from the merits ruling in a habeas case.[125]

---

[121]   *See* ¶¶111-113 above.

[122]   *See Am. Life Ins. Co. v. Stewart,* 300 U.S. 203, 214 (1937) (remedy at law must be "equally...certain" as equitable remedy).

[123]   *E.g., Mitchell,* 651 F.3d at 595-96.

[124]   *Id.*

[125]   *Miller-El,* 537 U.S. at 342.

¶192.  The grave miscarriage of justice requirement exists out of necessity to overcome the finality of judgments and res judicata, but finality and res judicata have traditionally played less of a role in habeas corpus.[126]

¶193.  And while Congress has enacted various provisions that bar second or successive §2255 motions, e.g., 28 U.S.C. §2255(h), Congress has not limited the ability to seek review of the COA decisions in habeas proceedings.

¶194.  There is no controlling case that directly addresses whether the grave miscarriage of justice requirement may be applied in a Rule 60(d)(1) action challenging an order or proceeding as opposed to a judgment.[127]

¶195.  To the extent this Court is inclined to impose a grave miscarriage requirement to this Claim challenging the COA order or proceeding, Basey alleges that there has been a grave miscarriage of justice because:

   a. there is strong reason to believe he is actually innocent of the crimes he was convicted of as explained more fully in Exhibit I which is a copy of Basey's Memorandum of Law in Support of his Application for a Second or Successive §2255 Motion which he incorporates fully as if set forth here,[128]

---

[126]  *See generally* Randy Hertz & James L. Leibman, *Federal Habeas Corpus Practice and Procedure,* 7th Edition §28.2[a] n.3 (collecting cases where habeas petitioners could seek collateral review of their habeas petitions).

[127]  *Cf. U.S. v. Corrales-Vasquez*, 931 F.3d 944, 954 (9th Cir. 2019) ("[C]ases are not precedential for propositions not considered.").

[128]  Exh. I at Claims, I, IV - VII.

b. "[a] bona fide due process...claim would surely clear even this difficult threshold," Basey alleges a bona fide due process claim in Claims 4 - 6 of this Complaint which Basey incorporates as if set forth here.

## *This is not a disguised second or successive motion.*

¶196.   This Claim does not "add a new ground for relief" to a §2255 motion, nor does it "attack a court's previous resolution of a claim on the merits."[129] since COA rulings are "distinct from the underlying merits."[130]

¶197.   Rather, this Claim attacks a "defect in the integrity of the" COA proceeding.[131]

¶198.   Should this claim be denied, it is not subject to a COA requirement under 28 U.S.C. §2253 as the COA requirement applies only to "final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the prisoner's detention."[132]

## Relief sought.

¶199.   Basey seeks the following relief on this Claim:

a. a decree relieving Basey of the prior COA ruling, and

b. a *de novo* COA ruling conducted by this Court.

---

[129]   *Gonzalez v. Crosby*, 545 U.S. 524,      (2005).

[130]   *Miller-El*, 537 U.S. at 342.

[131]   *Gonzalez*, 545 U.S. at 538.

[132]   *Harbison v. Bell*, 556 U.S. 180, 173 L. Ed. 2d 347, 354 (2009).

¶200.  Basey suffered and continues to suffer irreparable harm from **being** denied his government-created right to a full and fair COA proceeding **under** 28 U.S.C. §2253 that applies the appropriate case law in making the **COA** ruling.

### C.  Claims brought under 28 U.S.C. §1331 and the Constitution brought against the Government and its officers in their official capacities.

**Claim Five: Basey's due process right to pre-trial exculpatory information was violated by officers of the United States, acting in their official capacity, and Basey demands relief in the equitable grace of this Court to access this exculpatory information.**

¶201.  Basey incorporates every prior paragraph by reference.

*Equity principles.*

¶202.  "The merger of law and equity powers in one court, in one form of civil action...permit[s] the same court[] in which the request for equitable relief is filed to determine the matter of the legal [right] and then proceed from there to the equitable issue...."[133]

¶203.  "Whenever the law court can afford no remedy, or if it has a remedy but no power to administer it, it is said that the remedy is in equity."[134]

---

[133]  William DeFuniak, *Handbook of Modern Equity* 57 (2ed. 1956).

[134]  1 Joseph Story, *Commentaries on Equity Jurisprudence* §94, p. 95 (14th ed. 1918), 1 *Blackstone's Commentaries* *62 (equity exists for correction of situations wherein the law, by reason of its universality, is deficient).

¶204.  "Generally speaking,...equity will afford a remedy for every conceivable wrong."[135]

### Basey suffers irreparable harm by having been denied his constitutional right to pre-trial exculpatory information.

¶205.  The Supreme Court has interpreted the Fifth Amendment to require the prosecution to provide the defendant with exculpatory information in the Government's possession prior to trial.[136]

¶206.  Basey had a right to pre-trial exculpatory information in the Government's possession tending to disprove the reality of the alleged minors depicted in the images that form the basis of his convictions under 18 U.S.C. §2252(a).[137]

¶207.  To show a Fifth Amendment violation of the right to exculpatory information, Basey must show by preponderance of the evidence that (1) there existed undisclosed evidence that was favorable to him in his criminal trial and (2) the Government suppressed the evidence.[138]

---

[135]  Story, *supra* at §94, p. 95.

[136]  *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 439-40 (1995).

[137]  *Cf. U.S. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007) (government must prove alleged minors are real beyond a reasonable doubt in §2252(a) prosecutions).

[138]  *See U.S. v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009).

¶208. Basey must also prove that the undisclosed evidence was material to his innocence by showing a "reasonable probability" of a different outcome at trial had the evidence been disclosed.[139]

¶209. Given the Government's standard practices for determining whether alleged minors are real in §2252(a) cases (as explained above in paragraphs 31-36), the Government's failure to produce any of this type of reality-verification evidence to Basey or at trial creates an inference that exculpatory information exists that is favorable to Basey.[140]

¶210. An inference that undisclosed favorable exculpatory evidence exists is all that is needed to shift the burden of proof to the Government to prove its nonexistence.[141]

¶211. Basey believes that the FOIA claims above or discovery on this Claim, if granted, will yield exculpatory information relating to the reality of the alleged minors depicted in the images that form the basis of his conviction.[142]

---

[139]   *Kyles*, 514 U.S. at 434.

[140]   *See. e.g., U.S. v. Charles,* 738 F.2d 686, 698 (5th Cir. 1984); *U.S. v. Noah,* 475 F.2d 688, 691 (9th Cir. 1973) (failure to produce evidence within party's control creates a presumption favoring the other party).

[141]   *See U.S. Kaiput Pelisamen,* 641 F.3d 399, 408 (9th Cir. 2011).

[142]   Exh. J at ¶3 (Basey Decl.).

¶212.   Members of the FBI Field Office and the U.S. Attorney's Office for the District of Alaska, including FBI agent Jolene Goeden and AUSA Kyle Reardon, acting in their official capacities, suppressed this exculpatory information regarding the lack of reality of the alleged minors depicted in images that form the basis of Basey's conviction.

¶213.   Given their training and experience, the common practice of disclosing information regarding the reality of minors in §2252 cases,[143] and the Government's common practices for determining whether alleged minors are real in §2252(a) cases (*see* paragraph 31-36 above), this creates at least an inference that members of the FBI Field Office and the U.S. Attorney's Office for the District of Alaska, including Goeden and Reardon, knew of or possessed such evidence, yet willfully or inadvertently failed to disclose it to Basey.

¶214.   An inference of knowledge or possession of exculpatory material shifts the burden to the Government to demonstrate the prosecutor satisfied his duty to disclose all favorable evidence.[144]

---

[143]   *E.g., U.S. v. Hornback*, 2010 U.S. Dist. LEXIS 12440, *3 (E.D. Ky. Nov. 23, 2010) (noting that the Government gave "the Defendant's counsel...information indicating that a number of images and one video depict previously-identified 'real' children").

[144]   *U.S. v. Price*, 566 F.3d 900, 910 (9th Cir. 2009).

¶215.  Basey was prejudiced from the nondisclosure of exculpatory information regarding the non-reality of the alleged minors depicted **in the** images forming the basis of his conviction because he was convicted.

¶216.  Given the paucity of other evidence supporting the reality-of-the-minor elements of Basey's charges, had the jury been presented with reports tending to disprove the reality of the alleged minors in the images at trial, there is a reasonable likelihood that the proceeding would have ended differently in either an acquittal or hung jury.

¶217.  Basey could have also used evidence tending to disprove the alleged minors' reality to impeach agent Goeden's trial testimony that the images depicted minors by forcing her to admit her investigation could not conclusively prove the images depicted real minors.[145]

¶218.  Thus, Basey was irreparably harmed by being denied his constitutional right to pretrial exculpatory evidence.[146]

### *Basey lacks any remedy at law.*

¶219.  Basey is not able to bring a *Brady* claim under 28 U.S.C. §2255 because (1) he has already filed and was denied relief on a §2255 motion (2)

---

[145]  Crim. Dkt. 261 at 88, 101 (Tria Tr. Day 2) (describing images).

[146]  *See, e.g., Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' ") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

he cannot file a second §2255 motion raising a *Brady* claim until he successfully applies for and receives permission from the Ninth Circuit **under** 28 U.S.C. §2255(h)(2).

¶220.  Basey cannot file an application under §2255(h)(2) until he receives newly discovered evidence that he can prove his actual innocence by clear-and-convincing evidence which is what he's trying to set the stage for with this Claim.

¶221.  The FOIA claims raised above may take longer to litigate than this claim making this remedy at law less prompt.[147]

¶222.  Thus, Basey lacks an adequate remedy at law.

### *Relief sought.*

¶223.  Basey seeks the following relief:

    a. access to suppressed evidence regarding the reality or lack thereof or inconclusiveness of the reality of the alleged minors depicted in the images forming the basis of Basey's conviction (Exh. G&H (under seal)),

    b. affidavits or declarations from defendants Goeden and Reardon explaining efforts made by them to determine whether the alleged minors depicted in the images at trial were real and why this information was not given to Basey before trial, and

    c. any other appropriate relief.

### *This Claim is not* **Heck** *barred.*

---

[147]  *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) (the remedy at law must be "equally prompt and certain and in other ways efficient" as equitable remedy).

¶224.   Where a successful suit "would necessarily imply the invalidity" of a conviction or sentence, it must be dismissed.[148]

¶225.   The *Heck* bar is inapplicable, and success on this Claim would not necessarily imply the invalidity of Basey's conviction, because:

a.   Success would yield only access to evidence and/or reasons why it was suppressed.[149]

b.   Production of the suppressed evidence could yield inconclusive evidence (e.g., an expert's opinion saying they could not conclusively determine whether the minor is real).[150]

c.   Even if the suppressed evidence exonerates Basey, a separate proceeding—under 28 U.S.C. §2252(h)(1)—would be required where Basey may or may not receive permission to file another §2255 motion. Thus, even is successful here, Basey is two steps removed from overturning his conviction.[151]

d.   Because 28 U.S.C. §2255(h)(1) imposes a higher burden of proof—clear-and-convincing proof—compared to here—a preponderance or reasonable likelihood standard—success here does not spell automatic success in a later habeas proceeding.[152]

### *This Claim is distinguishable from those in* Osborne *and other post-conviction DNA testing cases.*

---

[148]   *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

[149]   *See Osborne v. DA's Office*, 423 F.3d 1050, 1054 (9th Cir. 2005); *Bradley v. Pryor*, 305 F.3d 1287, 1290 (11th Cir. 2002).

[150]   *See Osborne*, 423 F.3d at 1054.

[151]   *See id.* at 1054-55; *Bradley*, 705 F.3d at 1290.

[152]   *Lopez*, 577 F.3d at 1067 ("*[S]ome* meritorious Brady claims will establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense.") (emphasis added).

¶226.  *Osborne* and other cases like it did not allege true *Brady* claims because the plaintiffs sought new DNA testing that, by definition, was not in the Government's possession prior to trial thereby failing to meet all elements making a successful *Brady* claim.[153]

¶227.  Here, Basey alleges true *Brady* violations because the Government was in possession of exculpatory information regarding the reality of the alleged minors.

¶228.  Further, *Osborne* and others did not try to invoke the equitable jurisdiction of the courts to award relief as a matter of *grace* as opposed to a *right* under the Constitution or state law.[154]

¶229.  Here, Basey asks this Court as a matter of grace to remedy the violation of his right to pre-trial exculpatory information.[155]

---

[153]  *Osborne*, 423 F.3d at 1052 ("Osborne asserts that neither STR nor mtDNA analysis was available at the time of his trial."); *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007) (plaintiff sought "only an injunction requiring that the knife be made available for DNA testing"); *see Steidl v. Fermom*, 494 F.3d 623, 629 (7th Cir. 2009); *Collins v. City of New York*, 923 F. Supp. 2d 462, 474 (E.D.N.Y. 2013) ("Since Collins's *Brady* claim involves nondisclosure of evidence in existence at the time of trial, *Osborne* does not apply.") (citing *Steidle, supra*).

[154]  *DA's Office v. Osborne*, 557 U.S. 52, 68 (2009) ("Osborne does, however, have a liberty interest in demonstrating his innocence with new evidence under state law).

[155]  *See In re Gunning*, 124 F.2d 7, 13 (9th Cir. 1941) (Haney, J. dissenting) (" 'The decree of a chancellor is always a matter of grace and never the absolute right of a litigant. The propriety of affording equitable relief rests in the

¶230.   There is dicta in *Skinner v. Switzer* that says: "Unlike DNA **testing,** which may yield exculpatory, incriminating, or inconclusive results, **a *Brady*** claim, when successful post-conviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always **favorable** to the defendant and material to his guilt or punishment....And parties asserting *Brady* violations postconviction generally do seek a judgment qualifying them for 'immediate or speedier release' from imprisonment.[156]

¶231.   This dicta is wrong when applied to this Claim because:

   a. Basey is not seeking immediate or speedier release as his relief.

   b. Any release from imprisonment would have come in a separate habeas action.

   c. Success here with a lower standard of proof would not spell automatic success under 28 U.S.C. §2255(h)(1)'s tougher standard.[157]

   d. And suppressed records, although "favorable" in the sense they may ultimately allow Basey a shot at a new trial, may not spell automatic success at the new trial.

## Claim Six: Basey's due process right to pre-trial exculpatory information was violated by officers of the United States, acting in their official capacity, and *Brady's* continuing

───────────────

sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case.").

[156]   562 U.S. 521, 536 (2011).

[157]   *Lopez*, 577 F.3d at 1067 (not all Brady claims will meet §2255(h)(1) standard).

Basey v. Reardon
Compl.                                                                      57

**disclosure obligation constitutionally requires this information be disclosed to Basey.**

¶232.   Basey incorporates by reference every prior paragraph.

¶233.   This Claim relies directly on the Constitution as interpreted by *Brady v. Maryland*, instead of equitable grace, to obtain wrongfully suppressed exculpatory information.

¶234. *Brady v. Maryland's* disclosure obligations continues after conviction, sentence, appeal, and even after habeas proceedings.[158]

### *Basey suffers irreparable harm.*

¶235.   The Supreme Court has interpreted the Fifth Amendment to require the prosecution to provide the defendant with exculpatory information in the Government's possession prior to trial.[159]

¶236.   Basey had a right to pre-trial exculpatory information in the Government's possession tending to disprove the reality of the alleged minors

---

[158]   *See, e.g., Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007); *High v. Head,* 209 F.3d 1257, 1265, n.8 (11th Cir. 2001); *Collins v. City of New York*, 923 F. Supp. 2d 462, 474 (E.D.N.Y. 2013); *see also Thompson v. Calderon*, 151 F.3d 918, 935 n.12 (9th Cir. 1958) (Reinhardt, J., concurring and dissenting).

[159]   *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 439-40 (1995).

depicted in the images that form the basis of his convictions under 18 U.S.C.
§2252(a).[160]

¶237.  To show a Fifth Amendment violation of the right to exculpatory
information, Basey must show by preponderance of the evidence that (1)
there existed undisclosed evidence that was favorable to him in his criminal
trial and (2) the Government suppressed the evidence.[161]

¶238.  Basey must also prove that the undisclosed evidence was material to
his innocence by showing a "reasonable probability" of a different outcome at
trial had the evidence been disclosed.[162]

¶239.  Given the Government's standard practices for determining whether
alleged minors are real in §2252(a) cases (as explained above in paragraphs
31-36), the Government's failure to produce any of this type of
reality-verification evidence to Basey or at trial creates an inference that
exculpatory information exists that is favorable to Basey.[163]

---

[160]  *Cf. U.S. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007) (government must
prove alleged minors are real beyond a reasonable doubt in §2252(a)
prosecutions).

[161]  *See U.S. v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009).

[162]  *Kyles*, 514 U.S. at 434.

[163]  *See. e.g., U.S. v. Charles*, 738 F.2d 686, 698 (5th Cir. 1984); *U.S. v. Noah*,
475 F.2d 688, 691 (9th Cir. 1973) (failure to produce evidence within party's
control creates a presumption favoring the other party).

¶240.  An inference that undisclosed favorable exculpatory evidence exists is all that is needed to shift the burden of proof to the Government to prove its nonexistence.[164]

¶241.  Basey believes that the FOIA claims above or discovery on this Claim, if granted, will yield exculpatory information relating to the reality of the alleged minors depicted in the images that form the basis of his conviction.[165]

¶242.  Members of the FBI Field Office and the U.S. Attorney's Office for the District of Alaska, including FBI agent Jolene Goeden and AUSA Kyle Reardon, acting in their official capacities, suppressed this exculpatory information regarding the lack of reality of the alleged minors depicted in images that form the basis of Basey's conviction.

¶243.  Given their training and experience, the common practice of disclosing information regarding the reality of minors in §2252 cases,[166] and the Government's common practices for determining whether alleged minors are real in §2252(a) cases (*see* paragraph 31-36 above), this creates at least an inference that members of the FBI Field Office and the U.S. Attorney's Office

---

[164]   *See U.S. Kaiput Pelisamen*, 641 F.3d 399, 408 (9th Cir. 2011).

[165]   Exh. J at ¶3 (Basey Decl.).

[166]   *E.g., U.S. v. Hornback*, 2010 U.S. Dist. LEXIS 12440, *3 (E.D. Ky. Nov. 23, 2010) (noting that the Government gave "the Defendant's counsel...information indicating that a number of images and one video depict previously-identified 'real' children").

Basey v. Reardon
Compl.                                                                                        60

for the District of Alaska, including Goeden and Reardon, knew of or possessed such evidence, yet willfully or inadvertently failed to disclose it to Basey.

¶244.   An inference of knowledge or possession of exculpatory material shifts the burden to the Government to demonstrate the prosecutor satisfied his duty to disclose all favorable evidence.[167]

¶245.   Basey was prejudiced from the nondisclosure of exculpatory information regarding the non-reality of the alleged minors depicted in the images forming the basis of his conviction because he was convicted.

¶246.   Given the paucity of other evidence supporting the reality-of-the-minor elements of Basey's charges, had the jury been presented with reports tending to disprove the reality of the alleged minors in the images at trial, there is a reasonable likelihood that the proceeding would have ended differently in either an acquittal or hung jury.

¶247.   Basey could have also used evidence tending to disprove the alleged minors' reality to impeach agent Goeden's trial testimony that the images depicted minors by forcing her to admit her investigation could not conclusively prove the images depicted real minors.[168]

---

[167]   *U.S. v. Price*, 566 F.3d 900, 910 (9th Cir. 2009).

[168]   Crim. Dkt. 261 at 88, 101 (Tria Tr. Day 2) (describing images).

¶248.   Thus, Basey was irreparably harmed by being denied his

constitutional right to pretrial exculpatory evidence.[169]

### *Relief sought.*

¶249   Basey seeks the following relief:

    a.  access to suppressed evidence regarding the reality or lack thereof or inconclusiveness of the reality of the alleged minors depicted in the images forming the basis of Basey's conviction (Exh. G&H (under seal)),

    b.  affidavits or declarations from defendants Goeden and Reardon explaining efforts made by them to determine whether the alleged minors depicted in the images at trial were real and why this information was not given to Basey before trial, and

    c.  any other appropriate relief.

### *This Claim is not* Heck *barred.*

¶250.   Where a successful suit "would necessarily imply the invalidity" of a

conviction or sentence, it must be dismissed.[170]

¶251.   The *Heck* bar is inapplicable, and success on this Claim would not

necessarily imply the invalidity of Basey's conviction, because:

    a.  Success would yield only access to evidence and/or reasons why it was suppressed.[171]

---

[169]   *See, e.g., Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' ") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[170]   *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

[171]   *See Osborne v. DA's Office*, 423 F.3d 1050, 1054 (9th Cir. 2005); *Bradley v. Pryor*, 305 F.3d 1287, 1290 (11th Cir. 2002).

b. Production of the suppressed evidence could yield inconclusive evidence (e.g., an expert's opinion saying they could not conclusively determine whether the minor is real).[172]

c. Even if the suppressed evidence exonerates Basey, a separate proceeding—under 28 U.S.C. §2252(h)(1)—would be required where Basey may or may not receive permission to file another §2255 motion. Thus, even is successful here, Basey is two steps removed from overturning his conviction.[173]

d. Because 28 U.S.C. §2255(h)(1) imposes a higher burden of proof—clear-and-convincing proof—compared to here—a preponderance or reasonable likelihood standard—success here does not spell automatic success in a later habeas proceeding.[174]

### *This Claim is distinguishable from those in* Osborne *and other post-conviction DNA testing cases.*

¶252.  *Osborne* and other cases like it did not allege true *Brady* claims

because the plaintiffs sought new DNA testing that, by definition, was not in

the Government's possession prior to trial thereby failing to meet all

elements making a successful *Brady* claim.[175]

---

[172]  *See Osborne*, 423 F.3d at 1054.

[173]  *See id.* at 1054-55; *Bradley*, 705 F.3d at 1290.

[174]  *Lopez,* 577 F.3d at 1067 ("*[S]ome* meritorious Brady claims will establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense.") (emphasis added).

[175]  *Osborne*, 423 F.3d at 1052 ("Osborne asserts that neither STR nor mtDNA analysis was available at the time of his trial."); *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007) (plaintiff sought "only an injunction requiring that the knife be made available for DNA testing"); *see Steidl v. Fermom*, 494 F.3d 623, 629 (7th Cir. 2009); *Collins v. City of New York*, 923 F. Supp. 2d 462, 474 (E.D.N.Y. 2013) ("Since Collins's *Brady* claim involves nondisclosure of

¶253. Here, Basey alleges true *Brady* violations because the Government was in possession of exculpatory information regarding the reality of the alleged minors.

¶254. There is dicta in *Skinner v. Switzer* that says: "Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful post-conviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment....And parties asserting *Brady* violations postconviction generally do seek a judgment qualifying them for 'immediate or speedier release' from imprisonment.[176]

¶255. This dicta is wrong when applied to this Claim because:

    a. Basey is not seeking immediate or speedier release as his relief.

    b. Any release from imprisonment would have come in a separate habeas action.

    c. Success here with a lower standard of proof would not spell automatic success under 28 U.S.C. §2255(h)(1)'s tougher standard.[177]

    d. And suppressed records, although "favorable" in the sense they may ultimately allow Basey a shot at a new trial, may not spell automatic success at the new trial.

_____

evidence in existence at the time of trial, *Osborne* does not apply.") (citing *Steidle, supra*).

[176] 562 U.S. 521, 536 (2011).

[177] *Lopez*, 577 F.3d at 1067 (not all Brady claims will meet §2255(h)(1) standard).

## V.    Prayer for Relief.

Basey requests the following relief:

a. An injunction requiring the DOJ and its components to produce all reasonably segregable information responsive to his FOIA request by sending this information to the following email address: lorettagaines111067@gmail.com. Alternatively, the responsive information may be sent in digital/electronic file formed on a DVD or CD to the following address:

> Loretta Gaines
> 1137 Ashford Lane
> Lexington, KY 40515

A second set of copies and responsive information should be sent in paper format to Basey's prison address:

> Kaleb Lee Basey
> 17753-006 Cardinal Unit
> Federal Medical Center Lexington
> P.O. Box 14500
> Lexington, KY 40512-4500

b. An injunction barring the DOJ from assessing search fees for Basey's request due to its failure to follow FOIA's time limits. 5 U.S.C. §552(a)(4)(A)(viii).

c. Award Basey costs in accordance with 5 U.S.C. §552(a)(4)(E)(i).

d. An injunction requiring the Government to disclose any information regarding the reality or lack thereof of the alleged minors depicted in the images forming the basis of Basey's federal conviction (Exh. G&H (under seal)).

e. An injunction requiring defendants Goeden and Reardon to submit affidavits or declarations regarding efforts made to determine the reality of the alleged minors depicted in the images forming the basis of Basey's conviction and why this information wasn't provided to Basey or his counsel.

f. A *de novo* COA proceeding regarding Basey's §2255 motion.

g. A decree relieving Basey of this Court's prior order denying him a COA in his §2255 proceeding.

h. Any other relief that is proper.

Respectfully submitted this _____4th_____ day of _____June_____, 2023.

_____Kaleb Lee Basey_____
Kaleb Lee Basey
Plaintiff in Pro Se

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

RESS FIRMLY TO SEAL

**FROM:**

Kaleb Lee Basey
19753-006 Cardinal Unit
Federal Medical Center Lexington
P.O. Box 14500
Lexington, KY 40512-4500

**TO:**

James M. Fitzgerald
Courthouse ; Federal Building
Civil Process Clerk
222 West 7th Avenue
Room 229 Box 15uite #4
Anchorage, AK 99513

---

U.S. POSTAGE
$9.65
PM
40517
Date of sale
08/04/23
02      SSK
981400147A
8025306042015A9

# PRIORITY MAIL®

**RDC 04**

KALEB L BASEY
PO BOX 14500
LEXINGTON KY 40512-4500

EXPECTED DELIVERY DAY: 06/09/23

SHIP
TO:
COURTHOUSE F BUILDING
JAMES M FITZGERALD
222 WEST 7TH AVE
ANCHORAGE AK 99513

**USPS TRACKING® NUMBER**

9505 5065 7176 3155 5244 89



To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

EP14F May 2020
OD: 12 1/2 x 9 1/2

---

UNITED STA
POSTAL SER

d delivery date specified
mestic shipments include
ack-Stg® included for dom
international insurance.**
sed internationally, a cust
oes cover certain items. For
il Manual at http://pe.usps.com
ational Mail Manual at http://pe.

RATE ENVI
ANY WEIGHT

CKED • INSURED